IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| IN RE: ) | |
| ) | CHAPTER 11 |
| KANZLER LANDSCAPE CONTRACTOR, INC. ) | |
| ) | CASE NO. 17-37355 |
| ) | |
| Debtor-in-Possession. ) | JUDGE LASHONDA A. HUNT |
| ) | |
| IN RE: ) | |
| ) | CHAPTER 11 |
| JAMES J. KANZLER, ) | |
| ) | CASE NO. 17-37377 |
| ) | |
| Debtor-in-Possession. ) | JOINTLY ADMINISTERED |
| ) | |

### FINAL AGREED ORDER AND STIPULATION AUTHORIZING USE OF CASH COLLATERAL AND FOR ADEQUATE PROTECTION

THIS MATTER having come before the Court for hearing on the Motion of Debtors Kanzler Landscape Contractor, Inc. ("Kanzler Landscape") and James J. Kanzler ("Kanzler" and collectively, the "Debtors") for entry of an Interim Agreed Order and Stipulation ("Stipulation") Authorizing Debtors' Use of Cash Collateral and for Adequate Protection for First Midwest Bank, as successor in interest to People's Bank (the "Lender"); the Debtors and Lender having agreed to the terms of the Stipulation and being otherwise fully advised in the premises,

IT APPEARS TO THE COURT:

i.  The Debtors have provided adequate and sufficient notice of the Motion and no additional notice is necessary or practical under the circumstances.

ii.  This Court has jurisdiction over the parties and the subject matter of this proceeding pursuant to 28 U.S.C §1334.

1

4831-2776-4063.1.29178.65934

iii.  Granting of the relief set forth in the Stipulation is in the best interest of the Debtors' estates.

THE DEBTORS AND LENDER stipulate and agree with respect to the following:

A.  On November 1, 2008, Lender made a loan to the Debtors in the original principal amount of $1,649,901.05 ("First Loan"). The First Loan is evidenced by a promissory note dated November 1, 2008 ("First Note").

B.  On January 30, 2015, Lender made a second loan to Kanzler Landscaping in the original principal amount of $95,000 ("Second Loan"). The Second Loan is evidenced by a promissory note dated January 30, 2015 ("Second Note").

C.  On May 29, 2015, Lender made a third loan to Kanzler Landscaping in the original principal amount of $285,000 ("Third Loan" and collectively with the First and Second Loans, the "Loans"). The Third Loan is evidenced by a promissory note dated May 29, 2015 ("Third Note" and collectively with the First and Second Notes, the "Notes").

D.  To partially secure the Notes, Kanzler Landscaping granted Lender a continuing security interest in and to all of its equipment, accounts and other rights to payment; general intangibles including tax refunds, patents, copyrights, trademarks, trade secrets, good will, trade names, customer lists, permits and franchises, payment intangibles, computer programs and the right to use Kanzler Landscapings' name (collectively, the "Prepetition Collateral"), as evidenced by a Commercial Security Agreement dated January 30, 2015 (the "Security Agreement"). In addition, Lender filed UCC Financing Statements ("UCC Statements") with respect to the Pre-petition Collateral, on November 22, 2005 as Document No. 10390672, on June 14, 2010 as Document No. 09048831 (continuation statement), on August 10, 2011 as Document No. 09125910 (with respect to specific equipment), on June 22, 2015 as Document

4831-2776-4063.1.29178.65934

No. 09362267 (continuation statement), on August 25, 2016 as Document No. 09433898 (change name of secured party to First Midwest Bank). The Notes, Security Agreement, UCC Statements and all other documents delivered by the Debtors to Lender in connection with the Loans are collectively referred to as the "Pre-petition Loan Documents").

E.   As of the Petition Date, the Debtors were indebted to Lender in the aggregate amount of not less than $1,855,401.57 under the Prepetition Loan Documents, including but not limited to liquidated interest, costs, expenses, attorneys' fees and other charges thereon, in respect of Loans, advances and other financial accommodations made by Lender to Debtors in accordance with Prepetition Loan Documents (collectively, with all obligations of Debtors pay principal, interest, fees and charges and all other payment obligations of Debtors arising under or in relation to the Prepetition Loan Agreements, in each case whether now existing or hereafter arising, due or to become due, direct or indirect, absolute or contingent, and howsoever evidenced, held or acquired, the "Prepetition Indebtedness").

F.   Lender has a valid, enforceable, and perfected, first priority security interests in the Prepetition Collateral pursuant to the Prepetition Loan Documents and the Prepetition Indebtedness constitutes valid, binding and non-avoidable obligations and agreements of Debtors.

G.   In consideration for Lender's agreement to Debtors' use of Cash Collateral, as provided herein, Debtors stipulate and agree that they: (a) waive any claims arising from or in any way related to this Stipulation, the Prepetition Indebtedness, or the business relationship among the Debtors and Lender (b) claims under the avoidance provisions of 11 U.S.C. §§ 544, 547, 548, and 555, the surcharge provisions of 11 U.S.C §506(c) and enhancement of collateral provisions of 11 U.S.C. §552; and (c) irrevocably waive any right, without prior written consent

4831-2776-4063.1.29178.65934

of Lender, to (1) grant or impose, under 11 U.S.C. §364 or otherwise, liens and security interest of Lender, (2) use or seek to use Cash Collateral, (3) modify or affect any of the rights of Lender under this Stipulation, the Prepetition Indebtedness by any plan of reorganization confirmed in this case or subsequent order entered in this Case.

H.   Debtors admit that as of the date hereof, they have no knowledge of and no defenses, offsets or counterclaims with respect to the payment of any and all sums owing to Lender, with respect to the validity and/or enforceability of the Prepetition Loan Documents or with respect to the Prepetition Indebtedness.

**NOW THEREFORE, IT IS HEREBY ORDERED:**

1. The Debtors are allowed to use the Lender's cash collateral pursuant to the terms of this Stipulation.

2. The Debtors may pay those actual, necessary, ordinary course operating expenses with respect to the operation of its business as set forth in the attached Budget (the "Budget").

3. As adequate protection for any post-petition diminution in the value of Lender's interest in the Prepetition Collateral, including without limitation, for any diminution in value cause by Debtors' use of either the Prepetition Collateral or Cash Collateral, Lender is hereby granted a post-petition claim (the "Adequate Protection Claim") against Debtors' estates.

4. In order secure the Adequate Protection Claim, Lender is hereby granted a first priority security interest in and a lien upon (collectively, the "Replacement Liens") only to the extent and validity of any pre-petition lien: (a) the Prepetition Collateral and all post-petition proceeds thereof, including account receivable arising from the sale after the Petition Date of such Prepetition Collateral, and (b) all of Debtors' presently owned or hereafter acquired property and assets (the "Collateral" or "Post-Petition Collateral"), whether Debtors acquired

4

such collateral before or after the Petition Date, of any kind or nature, whether real or personal, tangible or intangible, wherever located, including, without limitation; all inventory, equipment, (including machinery and equipment held for lease), accounts contracts, real property, real property leases, general intangibles, (including but not limited to any claim that the Debtors may have against a customer which do not constitute receivables), patents, licenses, trademarks, rights to payment and tax refunds, chattel paper, shares of stock (including all shares of any affiliates or subsidiaries owned by the Debtors), goods cash, cash equivalents, instruments, investment property, documents, bank accounts, deposit accounts, certificates of deposit, and, to the extent not otherwise included, (i) all proceeds of each of the foregoing, (ii) all accession to, substitutions and replacements for, and insurance and condemnation proceeds, rents, profits, and products of each of the foregoing, (iii) claims against affiliates and subsidiaries, (iv) recoveries from third parties (including but not limited to recoveries from tax refunds from any governmental body or agency, including any sales tax credits or refunds, (v) all notes, evidences of indebtedness or provisions to pay in connection with sale of inventory and accounts receivable or related recoveries, (vi) all rights to all proceeds of insurance contracts, if any or other, (vii) the Prepetition Collateral and (viii) all property of Debtors held by Lender, including without limitation, the funds from time to time on deposit in special restricted accounts and all other property of every description, now or hereafter in the possession or custody of or in transit to Lender for any purpose, including safekeeping, collection or pledge, for the account of Debtors or as to which Debtors may have any right or power, subject only to any valid, perfected, enforceable and unavoidable liens and security interests granted by Debtors to any person or entity other than Lender, and which liens or security interests were superior in priority to Lender's pre-petition security interests in and liens upon such property of Debtors on the Petition Date.

4831-2776-4063.1.29178.65934

5. Notwithstanding the liens, mortgages, security interests granted herein to secure to the Adequate Protection Claim, the Collateral may be used by Debtors, if sufficient funds are not otherwise available from Debtors' estates, to pay the statutory fees of the Clerk of the Court and the United States Trustee pursuant to 28 U.S.C. § 1930(a).

6. As additional adequate protection for the Adequate Protection Claim, the Debtors shall pay to Lender the sum of $8,298.39 per month in the aggregate by the 10th day of each month, commencing on July 10, 2018.

7. No entity in the course of this bankruptcy case (whether Chapter 11 or subsequent Chapter 7) shall be permitted to recover from the Collateral any cost or expense of preservation or disposition of the Collateral, including, without limitation, any expenses and charges as provided in 11 U.S.C. §§ 506(c) or 552(b) without the prior written consent of Lender.

8. Debtors, at their expense, shall (a) continue to keep the Collateral fully insured against all loss, peril and hazard and make Lender co-insured and loss payee as its interests appear under such policies, and (b) pay any and all post-petition taxes, assessments and governmental charges with respect to such Collateral and provide Lender with proof thereof as requested by Lender.

9. The automatic stay provisions of 11 U.S.C, § 362 are hereby modified to permit: (a) Debtors and Lender to undertake and perform all acts and take all actions necessary to implement this Stipulation; and (b) Debtors to create, and Lender to perfect, any and all liens, mortgages and security interests granted hereunder; provided, however, that Lender shall not be required to file UCC financing statements or other instruments with any other filing authority to perfect any lien, mortgage or security interest granted by this Stipulation, or to take any other action to perfect such liens, mortgages and security interests; if, however, Lender shall, in its sole discretion, elect for any

4831-2776-4063.1.29178.65934

reason to file, record or serve any such financing statements or other documents: with respect to such liens and security interests, Debtors shall execute same upon request, and the filing, recording or service thereof (as the case may be), shall be deemed to have been made at the time and on the date of the commencement of the Chapter 11 cases on the Petition Date.

10. The occurrence of any of the following shall constitute an event of termination ("Termination Event") under this Stipulation, upon the occurrence of which Lender shall have no obligation to permit the continued use of Cash Collateral, and Debtors' ability to use Cash Collateral shall be terminated upon the giving of written notice thereof by Lender to counsel for Debtors (the "Termination Notice"), who will immediately supply a copy of such Termination Notice to the Office of the U.S. Trustee:

    a. Either Chapter 11 Case is either dismissed or converted a case under Chapter 7 of the Bankruptcy code;

    b. Any plan of reorganization or liquidation of either Debtor is confirmed which does not provide for the substantial payment of the Prepetition Obligation to Lender upon the effective date of the plan or such other treatment that is acceptable to Lender;

    c. Without the prior written consent of Lender and other than as contemplated in the Budget, (i) Debtor takes any action or ceases operations of its present business or takes any material adverse, or (ii) there shall occur a dissolution or termination of the existence of Debtor;

    d. This Stipulation is reversed, vacated, stayed, amended, supplemented or otherwise modified in a manner which shall, in the sole opinion of Lender, materially and adversely affect the rights of Lender hereunder or shall

7

4831-2776-4063.1.29178.65934

materially and adversely affect the priority of any or all of Lender's claims, liens or security interests (including without limitation stay modification in favor of the Internal Revenue Service); and

e. Non-compliance or default by the Debtors with respect to any of the terms and provisions of this Stipulation.

f. Failure by the Debtors to pay the Adequate Protection Payment when due and within ten (10) days after written notice by Lender of failure to make timely Adequate Protection Payment.

11. Upon the occurrence of a Termination Event and the giving of the Termination Notice by Lender to Debtors: (a) Debtors shall immediately segregate all of the Collateral, including without limitation, Cash Collateral, and shall not be permitted to use such Collateral until such Court Order is enforced; and (b) Lender shall have the right, free of the restrictions of 11 U.S.C. § 362 and with application to this Court, and after hearing if such Order is enforced, to take immediate reasonable action to protect and preserve the Collateral, and, after five (5) days' notice to Debtors' counsel, to exercise its rights and remedies pursuant to the Prepetition Agreements and/or applicable law as to all or such part of the Collateral as Lender, in its sole discretion, shall elect.

12. Debtors shall provide Lender with such written reports as Lender, in its reasonable discretion, shall require.

13. Debtors are directed to keep their books and records of original entry, including without limitation, records of sale, credits authorized (whether or not credit memoranda have been issued), purchases, accounts receivable, bills of lading, cash receipts, and cash

4831-2776-4063.1.29178.65934

disbursements, current and updated, so that all business activity is posted to them in the ordinary course of Debtors' business.

14. Lender and its professional advisors shall have the right, upon reasonable notice, at any time to inspect, audit, examine, check, make copies of or extracts from the books, accounts, checks, orders, invoices, bills of lading, correspondence and other records of Debtors, and Debtors shall make all of same available to Lender and its representatives, for such purposes.

15. Debtors shall deliver any and all payments or proceeds realized upon the sale, liquidation, collection or disposition of the Collateral, including without limitation, the proceeds of sales authorized pursuant to 11 U.S.C. § 363 or any plan of reorganization which come into its possession to Lender, in the form received.

16. The validity, extent, priority, perfection and enforceability of Lender's Prepetition Liens on the Prepetition Collateral shall not be subject to, challenge by Debtors and in furtherance thereof the Debtors shall, and hereby do, release, waive and affirmatively agrees not to allege or otherwise pursue any or all defenses, affirmative defenses, counterclaims, claims, causes of action, recoupments, setoffs or other rights that it may have to contest: (a) any defaults or events of default which were or could have been declared by Lender as of the Petition Date; (b) any provisions of the Prepetition Loan Documents; (c) the amount of Debtors' indebtedness to Lender as of the Petition Date; or (d) the conduct of Lender in administering the Prepetition Loan Documents between Debtors and Lender.

17. The liens, mortgages and security interests granted by this Stipulation shall be binding on each Debtor, its estate and its successors and assigns, even in the event that this Final Order is reversed or modified on appeal.

4831-2776-4063.1.29178.65934

18.  Notwithstanding Bankruptcy Rule 7062, the terms and conditions of this Stipulation shall be: (a) immediately enforceable pursuant to Bankruptcy Rule 8005; and (b) not be stayed absent (i) an application by a party in interest for such stay in conformance with such Bankruptcy Rule 8005, and (ii) a hearing upon notice to Debtors and Lender.

19.  The provisions of this Stipulation and any actions taken pursuant hereto shall survive entry of any order which may be entered confirming any plan of reorganization or which may be entered converting this case from a Chapter 11 proceeding to a Chapter 7 proceeding; provided, further, that the terms and provisions of this Stipulation, as well as the liens, mortgages and security interests and the Adequate Protection Claim granted shall continue in this or any superseding bankruptcy case and such liens, mortgages and security interests and the Adequate Protection Claim shall maintain their priority as provided by this Order until Debtors' Prepetition Indebtedness is satisfied in full.

20.  Nothing contained in this Stipulation or by Lender's consent to the use of Cash Collateral shall constitute a determination that Lender is not entitled to additional adequate protection for continued use of Cash Collateral. This Stipulation shall not constitute a concession by Lender or a finding by the Court that Lender's interest in Prepetition Collateral is "adequately protected" within the meaning of 11 U.S.C. §§ 361 and 363.

21.  Nothing in this Stipulation shall be construed to limit Lender's rights to apply to the Court at any time for modification of this Stipulation, for different or additional adequate protection, for termination of the use of Cash Collateral, for relief from the automatic stay, or for any other relief. Nothing in this Stipulation, shall constitute or be construed as a consent, acknowledgment or agreement by Lender to Debtors' calculation of the value of accounts receivable, inventory or Cash Collateral as used in the Budget, and nothing herein shall constitute a waiver or estoppel with

respect to the right of Lender to dispute the validity or accuracy of such calculation or any contention with respect to collateral values or adequate protection based thereon.

22. The ten-day automatic stay provided for by Bankruptcy Rule 4001(a)(3) shall not apply to this Stipulation.

DATED: 6-20-18                    ENTERED:_____
                                  United States Bankruptcy Judge

AGREED:

FIRST MIDWEST BANK                KANZLER LANDSCAPE
                                  CONTRACTOR, INC.

BY: _____             BY: _____
Michael W. Debre, its attorney         Lester A. Ottenheimer, III, its
attorney

                                  JAMES J. KANZLER, individually

                                  BY: _____
                                  Lester A. Ottenheimer, III, his attorney

Lester A. Ottenheimer
Ottenheimer Law Group, LLC
750 Lake Cook Road, Suite 290
Buffalo Grove, Illinois 60089
(847) 520-9400

11

4831-2776-4063.1.29178.65934